IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

REBECCA J. ROBINSON,                    )
                                         )
    Plaintiff,                       )
                                         )
v.                                       )     CASE NO.: 1:16-cv-00656-SRW
                                         )
MICHELIN NORTH AMERICA,                  )
INC.,                                    )
                                         )
    Defendant.                       )

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Rebecca J. Robinson brings this action against defendant Michelin North America, Inc. ("Michelin"), alleging employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA"), and the Age Discrimination in Employment Act of 1967, 42 U.S.C. § 621 *et seq*. ("ADEA"). *See* Doc. 8.

Defendant Michelin is a tire manufacturer. Plaintiff was employed by Michelin from July 27, 1998 until August 27, 2013. Doc. 24-4 at ¶ 14. She was hired to the position of "production operator," a tire builder position. *Id.* ¶ 16. Plaintiff was a tire builder and machine operator throughout her time as defendant's employee and held the "confection/finishing operator" job title from approximately 2003 until her termination

---

[1] On March 8, 2017, the parties consented to final dispositive jurisdiction by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 14; Doc. 15).

from employment. *Id.* ¶¶ 17-18. This lawsuit concerns allegations of discrimination under the ADA for defendant's failure to accommodate plaintiff's disability and her wrongful termination, and allegations of retaliatory termination under the ADA, ADEA, and Title VII for plaintiff's bringing a discrimination charge against defendant with the EEOC. Doc. 8 ¶¶ 30-33, 38-41, 56-62.

This action is presently before the court on defendant's motion for summary judgment. *See* Doc. 22. Plaintiff filed an opposition to the motion for summary judgment, *see* Doc. 28, and defendant replied, *see* Doc. 29. Upon review of the motion and the record, the court concludes that defendant's motion for summary judgment is due to be granted.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For summary judgment purposes, an issue of fact is "material" if, under the substantive law governing the claim, its presence or absence might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant fails to satisfy its initial burden, the motion for summary judgment will be denied. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1810 (2013). If the movant adequately supports its motion, the burden shifts to the opposing party to establish – "by producing affidavits or other relevant and admissible evidence beyond the pleadings" – specific facts raising a genuine issue for trial. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011); *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010); Fed. R. Civ. P. 56(c)(1)(A).

"All affidavits [and declarations] must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence[.]" *Josendis*, 662 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). The court views the evidence and all reasonable factual inferences in the light most favorable to the nonmovant. *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). However, "the nonmoving party 'must do more than show that there is some metaphysical doubt as to the material facts," and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (internal citations omitted). "If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (citation omitted) (internal quotation marks omitted).

## BACKGROUND AND UNDISPUTED FACTS[2]

### I.    Material Facts Regarding Plaintiff's Employment

---

[2] As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). These are the facts for summary judgment purposes only. They may or may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.") (citation and marks omitted). Also, the "facts" set out herein are gleaned from the parties' evidentiary submissions but not from counsels' unsubstantiated statements in the parties' briefs. "Statements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980). *See also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

Plaintiff was employed by Defendant from July 27, 1998 to August 27, 2013. Doc. 24-4 at ¶ 14. She worked as a machine operator and tire builder[3] during the entirety of her employment with Michelin. Doc. 24-1 at 8; Doc. 24-4 ¶ 17. Machine operator and tire builder jobs at the defendant's facility are labor-intensive and physically demanding. Doc. 24-4 ¶¶ 3, 6. Plaintiff's specific job title from 2003 until the termination of her employment was "confection/finishing operator," a position which involves significant lifting, pushing, and pulling, and frequent use of arms and hands to complete the job duties of the position. *See* Doc. 24-1 at 11, 22; Doc. 24-4 ¶¶ 17, 18. From approximately January 2012 to July 2012, plaintiff was placed on a temporary data entry assignment due to work restrictions resulting from an injury. Doc. 24-1 at 16; Doc. 24-4 ¶ 19. This temporary data assignment was not a formal position.[4] Doc. 24-4 ¶ 19. Plaintiff's employment was terminated on August 27, 2013, following a 12-month medical leave of absence, based on her inability to return to work as, or perform the essential job functions of, a confection finishing operator, an open and available machine operator and tire builder position, or any other comparable position. *See* Doc. 24-1 at 24-25; Doc. 24-4 ¶ 23; Doc. 24-5 ¶¶ 7, 9, 24, 25.

---

[3] The terms "machine operator" and "tire builder" are used interchangeably. *See* Doc. 24-1 at 8; Doc. 24-4 ¶ 17.

[4] Plaintiff contends that, following her workplace injury, she "asked for, and was granted the temporary BAA job," and characterizes it as "the BAA position." Doc. 28-1 ¶¶ 4-10. However, plaintiff's representation is not supported by any evidence other than her own conclusory statement. Evidence submitted by defendant indicates that plaintiff was provided with a temporary data entry assignment that was "not a formal job position," and that Michelin does not place full-time employees into temporary positions. Doc. 24-4 ¶¶ 2, 14, 19; Doc. 24-3 at 20-21. Also, plaintiff's own testimony indicates that she understood the data entry assignment to be a temporary assignment lasting no longer than 6 months. Doc. 24-1 at 16. Plaintiff further stated that her pay and benefits remained the same as those of a machine operator during the period in which she performed data entry. Doc. 24-1 at 38-39.

## II. Material Facts Regarding Plaintiff's Injury

Plaintiff was injured on the job on June 27, 2011, which permanently limited her ability to carry large weights and lift objects. Doc 28-1 ¶ 3; Doc. 24-4 ¶ 23; Doc. 24-5 ¶¶ 5, 24. After her injury, Plaintiff was unable to perform the machine operator job and was immediately placed on work restriction. Doc. 24-1 at 14; Doc. 24-5 ¶ 7. Between June 2011 and July 2012, plaintiff experienced no improvement in her condition, and she had elbow surgery in July 2012. Doc. 24-1 at 15. She underwent a second elbow surgery in November 2012. *Id.* Plaintiff continued to experience pain, and her work restrictions remained the same after both surgeries. *Id.* at 17. Between August 2012 and January 2013, plaintiff had a significant amount of pain, regularly visited the doctor, and was unable to work as a tire builder/machine operator. *Id.* at 19-20. She did not experience any improvement in her medical condition between January and March 2013. *Id.* at 20. Although plaintiff had some improvement in April and May of 2013, she continued to have significant pain through August 2013, when her employment with defendant was terminated. *See id.* at 23-24.

## III. Material Facts Regarding Plaintiff's Ability to Perform the Essential Functions of the Confection/Finishing Operator Position

As a confection/finishing operator, otherwise known as a machine operator and tire builder, plaintiff "was responsible for operating a tire building machine, and loading and assembling various 'input' products into tires that were being manufactured." Doc. 24-4 ¶ 18. Plaintiff's June 2011 injury resulted in her being unable to perform her job duties as a machine operator and tire builder. Doc. 24-1 at 14, 17, 19; Doc. 24-5 ¶ 7. A Functional Capacity Evaluation ("FCE") conducted on March 7, 2013 determined that Plaintiff did

not meet the identified strength classification needed to fulfill the physical demands of the machine operator position. Doc 24-1 at 21-22, 54-55. At all times between her injury and termination, plaintiff remained on work restriction and was not able to perform the job requirements of a machine operator or tire builder. Doc. 24-1 at 24-25; Doc. 24-5 ¶ 24; Doc. 24-4 ¶ 23.

### IV.    Material Facts Regarding Defendant's 12-Month Leave of Absence

The relevant section of defendant's medical leave of absence policy states that:

> Employees on leave for longer than twelve (12) weeks may be permanently replaced and reassigned depending on business necessity (i.e., the nature of their current job, required training period, etc.) and applicable legal requirements. If the Company protects an employee's job during a Medical Leave that exceeds or is otherwise not covered by FLA, the Company is doing so as an accommodation under applicable law. … The maximum duration of any Medical Leave of Absence for regular, full-time employees is typically twelve (12) months. … [i]f a regular, full-time employee is unable to return to a full-time, regular job at the end of a twelve month period, employment may be terminated.

Doc. 24-1 at 44-45.

Plaintiff applied for and was approved for a medical leave of absence on August 21, 2012. Doc. 24-1 at 53; Doc. 24-5 ¶ 7; Doc. 24-4 ¶ 21. When plaintiff applied for leave, she understood that her employment could be terminated if she was unable to return to work after 12 months. Doc. 24-1 at 18, 19, 25. Between August 2012 and August 2013, while plaintiff was on leave, plaintiff neither contacted defendant to ask to return to work in any capacity, nor did she inform defendant that she would be able to return to work at any point. Doc. 24-1 at 20-25; Doc. 24-5 ¶ 9. Plaintiff testified that she was not able to return to work as a tire builder or otherwise at the conclusion of her medical leave of absence, consistent

with the medical evaluations she had received. Doc. 24-1 at 25. When plaintiff spoke with Roy Speights, area personnel manager for defendant, at the end of her medical leave, plaintiff stated that her condition was worsening. *Id.*; Doc. 24-5 ¶¶ 21, 25. Plaintiff did not request additional leave, and did not indicate that she would be able to return to work in the future. *Id.* at ¶ 9.

During plaintiff's medical leave of absence, she never asked to return to work in any capacity and did not request any accommodations in order to allow her to return to work or perform her essential job functions. *Id.* at ¶ 9. Yet, over the course of plaintiff's leave of absence period, defendant continued to evaluate plaintiff's suitability for open and available machine operator and tire builder positions.

In March 2013, defendant asked plaintiff's treating physician to evaluate her for her suitability for three open positions based on her work restrictions and FCE results: the Fischer Windup operator position, the FE Complexor operator position, and the confection/finishing operator position.[5] Doc. 24-5 ¶¶ 10, 11. *See also* Doc. 24-1 at 22-23. Upon evaluation of the work requirements, plaintiff's physician determined that plaintiff would not be able to perform the FE Complexor operator or confection/finishing operator roles, and plaintiff may be able to perform the Fischer Windup operator position with some modification and additional equipment. Doc. 24-5 at ¶ 12. However, by the time defendant received the physician's determination, the Fischer Windup operator position had been

_____

[5] Although defendant Michelin usually asks its company physician to review job descriptions and evaluate whether an employee can return to work under his or her work restrictions, it asked plaintiff's treating physician to evaluate her suitability for those three positions because defendant was without a company physician in March 2013. Doc. 24-5 ¶ 20.

filled due to business necessity and was no longer available. *Id.* ¶¶ 13-14. In May 2013, defendant's company physician evaluated plaintiff's suitability for the BD4 Extruder operator position, and determined that the position did not fall within plaintiff's work restrictions. *Id.* at ¶¶ 18-19. *See also* Doc. 24-1 at 23.

Plaintiff's attorney contacted defendant's in-house legal department in March 2013, stating that plaintiff was qualified to perform several different positions: business analyst assistant, business unit leader, front-line leader, training instructor, and production point of contact. Doc. 24-5 ¶ 16. However, the business application administrator (mistakenly referred to by plaintiff's attorney as the "Business Analyst Assistant"), business unit leader, and training instructor positions were not open and available positions in 2013, and the front line leader and production point of contact positions referred to by plaintiff's attorney do not exist. Doc. 24-5 ¶ 17.

## DISCUSSION

Plaintiff's claims are: (1) an ADA claim for failure to accommodate her disability; (2) an ADA claim for wrongful termination; (3) an ADA claim for retaliation due to defendant's termination of plaintiff's employment on August 27, 2013; (4) an ADEA claim for retaliation based on defendant's termination of plaintiff's employment; and (5) a Title VII claim for retaliation based on defendant's termination of plaintiff's employment. The plaintiff does not plead additional legal claims in the amended complaint, *see* Doc. 8, and no other claims are before the court. The court addresses each claim in turn.

1. Title VII retaliation claim

"Retaliation is a separate violation of Title VII." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000). Section 704(a) of Title VII of the Civil Rights Act of 1964 provides protection for employees who oppose or participate in activities to correct an employer's discriminatory practices.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). Congress thus recognized two types of retaliation claims: one for opposition to discriminatory practices, and another for participation in protected activity.

> Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." ... And, under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (citations omitted). The plaintiff's retaliation claim is brought under the participation clause. *See* Doc. 8 ¶ 62.

Proving that an employer retaliated against an employee is rarely straightforward. A plaintiff's case generally rests on circumstantial evidence, because direct evidence of an employer's intent or motivation often is either unavailable or difficult to acquire. *See Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996) (*en banc*). Such is the case here, where the parties rely only on circumstantial evidence. Federal courts

typically evaluate the sufficiency of circumstantial evidence using some variant of the *McDonnell Douglas*[6] framework. *See St. Mary's Honor Center*, 509 U.S. 502.

"A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action."[7] *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)). For purposes of ruling on the instant motion for summary judgment, the court finds that the plaintiff satisfies the first two elements of a *prima facie* case – *i.e.*, she filed an EEOC charge alleging discriminatory conduct by defendant in August 2012, and defendant fired her in August 2013. However, the plaintiff has not produced evidence of causation, and the third element of her *prima facie* case is not met.

The Supreme Court recently clarified a plaintiff's burden, holding that, as to the causation standard for a retaliation claim, a plaintiff must "show that the [adverse

---

[6] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[7] Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to show, through admissible evidence, a legitimate, non-retaliatory reason for the adverse employment action. *See Burdine*, 450 U.S. at 255. If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by [retaliatory] animus," *id.* at 257, the presumption of retaliation created by the *prima facie* case "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10. The burden then shifts to the plaintiff to "come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely pretext for retaliation. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804).

employment action] would not have occurred in the absence of – that is, but-for – the defendant's conduct." *University of Texas Southwestern Med. v. Nassar*, 570 U.S. 338, 346-47, 133 S. Ct. 2517, 2525 (2013). In other words, a plaintiff has to "establish that his or her protected activity was a but-for cause [and not just a motivating factor] of the alleged adverse employment action by the employer." *Nassar*, 570 U.S. at 362. The Eleventh Circuit has

> recognized that a plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if [s]he shows that [s]he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. *See Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that [s]he subjectively (that is, in good faith) believed that h[er] employer was engaged in unlawful employment practices, but also that h[er] belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that h[er] belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). The plaintiff does not have to "prove the underlying discriminatory conduct that [she] opposed was actually unlawful in order to establish a prima facie case and overcome a motion for summary judgment[.]" *Id.* However, the objective reasonableness of her belief that the conduct is unreasonable must be shown. The court is required to "measure 'against existing substantive law' the objective reasonableness of [a plaintiff's] belief that [her employer] engaged in an unlawful employment practice." *Tatt v. Atlanta Gas Light Co.*, 138 F. App'x 145, 147 (11th Cir. 2005) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999)).

Here, the plaintiff testified that she believed that she was discriminated against on the basis of her gender. However, her subjective belief is not objectively reasonable in light of the evidence proffered in this case. Other than noting the different genders of those involved, the plaintiff provides nothing beyond conclusory speculation that defendant discriminated against her because of her gender. The plaintiff's speculation is not evidence that can overcome a properly supported motion for summary judgment. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1318 (11th Cir. 2011) (stating that "'evidence' consisting of one speculative inference heaped upon another" was "entirely insufficient" to overcome summary judgment); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995)). Plaintiff has not identified any action or comment that objectively could be construed as having been motivated by her gender. The only evidence of gender discrimination is the plaintiff's conclusory assertion. That alone is not enough to establish objective reasonableness.

Even assuming that plaintiff has demonstrated objective reasonableness, her opposition claim does not survive summary judgment because she has not established the third prong of a *prima facie* case of retaliation – causation. Plaintiff has not identified or produced evidence that would allow a reasonable factfinder to find a causal link between the protected activity and her termination. Viewing the facts in the light most favorable to plaintiff, she cannot establish that retaliation was the "but-for" cause of her termination. *See Butterworth v. Laboratory Corp. of America Holdings*, 581 F. App'x 813, 817 (11th

Cir. 2014) (holding that without establishing but-for causation, plaintiff failed to support her claim for Title VII retaliation adequately). To the contrary, plaintiff testifies that she understood that her employment might be terminated if she could not return to work after 12 months of medical leave, and that she was terminated after 12 months of medical leave when she was unable to return to work. *See* Doc. 24-1 at 18-19, 25. Accordingly, plaintiff has not made out a *prima facie* case of retaliation based on her complaint in August 2012 and her termination in August 2013, and defendant is entitled to summary judgment on that claim.

Also, assuming, without deciding, that plaintiff has established a *prima facie* case, she cannot overcome defendant's legitimate, non-retaliatory reason for terminating her employment. Defendant relies on the undisputed evidence of record, which includes the plaintiff's deposition testimony, that it terminated her employment pursuant to its medical leave of absence policy when plaintiff was unable to return to work after 12 months and did not indicate that she would be able to return to work at a future date. This is a legitimate, non-retaliatory explanation for the defendant's decision to terminate the plaintiff's employment.

Thus, it is plaintiff's burden to come forward with evidence sufficient to permit a reasonable factfinder to conclude that defendant's stated reasons were not the real reasons for her termination, but merely pretext for retaliation. Plaintiff cannot demonstrate pretext unless she shows both that the reasons were false and that retaliation was the real reason. *See St. Mary's Honor Ctr.*, 509 U.S. at 515. *See also Chapman*, 229 F.3d at 1030 (stating that plaintiff must meet each proffered reason "head on," and cannot succeed by simply

disputing the wisdom of the employer's proffered reasons). Here, the plaintiff disputes the defendant's stated reason for terminating her employment, but without identifying any evidence that shows that the reason was false and the true motivation was retaliation. Further, in light of the plaintiff's deposition testimony that she was terminated because she was unable to return to work after being on a medical leave of absence for 12 months, plaintiff has effectively testified that she believes the defendant's stated reason, and she cannot demonstrate on the evidence of record that it was not the real reason for her termination or that the reason was false. Also, there is no evidence of record that the plaintiff's termination was in retaliation for her August 2012 complaint of discrimination.

As the plaintiff cannot establish a prima facie case of retaliation, show pretext, or meet the onerous *Nassar* standard to maintain a retaliation claim under Title VII, defendant's motion for summary judgment is due to be granted as to defendant's retaliation claim.

2. ADEA retaliation claim

"To prove retaliation under the ADEA, a plaintiff must show that (1) [she] engaged in statutorily protected conduct, (2) [she] suffered an adverse employment action, and (3) the adverse action was causally related to the protected conduct." *Cobb v. City of Roswell*, 533 F. App'x 888, 895 (11th Cir. 2013) (citing *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002)). As in Title VII retaliation claims, plaintiff's burden of persuasion under the ADEA is to show that the protected conduct was the but-for cause of the adverse employment action. *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176-77 (2009). Plaintiff engaged in protected activity by filing an EEOC claim and suffered an adverse employment

action when her employment was terminated by defendant. However, as discussed above, plaintiff fails to show that the filing of her EEOC claim was the but-for cause of her dismissal, and her testimony actually supports defendant's stated non-discriminatory reason for terminating her employment. As plaintiff cannot establish a prima facie case of retaliation, show pretext, or meet the *Gross* standard to maintain a retaliation claim under the ADEA, defendant's motion for summary judgment is due to be granted as to defendant's retaliation claim.

3. ADA claims

Plaintiff brings three distinct claims under the ADA, alleging that defendant failed to accommodate her disability as required by the ADA, Doc. 8 ¶ 31-33, that defendant terminated her employment based on an allegation of discriminatory conduct under the ADA, *id.* ¶ 39, and that defendant retaliated against her by terminating her employment for filing an EEOC charge alleging discriminatory conduct, *id.* ¶ 41.

The Eleventh Circuit analyzes ADA discrimination claims under the *McDonnell-Douglas* burden-shifting analysis. To state a claim successfully under this framework, plaintiff must first establish a prima facie discrimination case, meaning she must show that (1) she is disabled, (2) she is a qualified individual, and (3) she was subjected to unlawful discrimination because of her disability. *Anderson v. Embarq/Spring*, 379 F. App'x 924, 927 (11th Cir. 2010).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities … (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C)(2009).

Whether an individual's impairment is a disability under the ADA does not demand extensive analysis, and "[t]he definition of disability shall be construed in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A). *See also Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014) (explaining that the primary object of ADA cases should be to determine whether covered entities have complied with the obligations and whether discrimination has occurred, as opposed to whether an impairment substantially limits a major life activity); *Smart v. Dekalb City*, 2018 WL 1089677 *6 (N.D. Ga. 2018) (quoting *Mazzeo*). The record evidence demonstrates that plaintiff suffered a physical impairment that could be construed as a disability for the purpose of a claim under the ADA.

The ADA defines "qualified individual" as an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of" her job. 42 U.S.C. § 12111(8). Essential functions "are the fundamental job duties of a position that an individual is actually required to perform." *Holly v. Clairson Indus. L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007). If, however, "the individual is unable to perform an essential function of [her] job, even with an accommodation, [she] is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA. … the ADA does not require the employer to eliminate an essential function of the plaintiff's job." *Id.* (quoting *D'Angelo v. Conagra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005)) (internal quotations omitted). The ADA states that "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). Furthermore:

According to the EEOC's regulations implementing the ADA, other factors to be considered include: "(1) the amount of time spent on the job performing the function, (2) the consequences of not requiring the incumbent to perform the function, (3) the terms of the collective bargaining agreement, (4) the work experience of past incumbents in the job, and (5) the current work experience of incumbents in similar jobs." *D'Angelo*, 422 F.3d at 1230 (quotation marks omitted) (citing 29 C.F.R. § 1630.2(n)(3)); *see also Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000) (same). In addition, the EEOC regulations identify three nonexclusive bases on which a job function may be deemed essential: "(1) the reason the position exists is to perform the function; (2) there are a limited number of employees available among whom the performance of the job function can be distributed; and (3) the function is highly specialized so that the incumbent in the position was hired for his or her expertise or ability to perform the particular function." *D'Angelo*, 422 F.3d at 1230 (quotation marks omitted) (citing § 1630.2(n)(2)).

*Holly*, 492 F.3d at 1258-59. The record does not contain information about a collective bargaining agreement or the work experience of past and present incumbents in the job. However, there is ample evidence in the record that the confection/finishing operator position occupied by plaintiff involved heavy lifting, pulling, and pushing, and the operation of machines; that the position primarily involved those functions; and that the inability to perform those functions would render plaintiff unable to perform the job of a confection/finishing operator. Plaintiff concedes that she was not qualified at any relevant time to perform the essential job duties of a confection/finishing operator. Doc. 28 at 3. Also, plaintiff did not make any request for accommodation to be able to return to the confection/finishing operator position. Instead, plaintiff suggests that she temporarily held an administrative position, and that she is a qualified individual under the ADA because she is able to perform the essential functions of the administrative position. However, the record demonstrates that the administrative role given to plaintiff was a temporary

assignment, that plaintiff understood that the assignment was temporary in nature, and that she was employed as a confection/finishing operator at the time of her injury through the time her employment was terminated. Thus, plaintiff is unable to make a prima facie case that she was a qualified individual under the ADA, and her claim fails.

Even if plaintiff had been able to show that she was a qualified individual, her claim would not succeed. Under the ADA, "[a]n employer discriminates against a qualified individual when the employer does not reasonably accommodate the individual's disability," and "[a]n accommodation is 'reasonable,' and therefore required under the statute, 'only if it enables the employee to perform the essential functions of the job.'" *Anderson,* 379 F. App'x at 927 (quoting *Holly*, 492 F.3d at 1255). *See also* 42 U.S.C. § 12112(b)(5)(A). In other words, "an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Holly*, 492 F.3d at 1262. However:

> The employee has the burden of identifying an accommodation and demonstrating that it is reasonable. Assuming she cannot do so, the employer has no affirmative duty to show undue hardship. Moreover, an employer's "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made."

*Frazier-White v. Gee*, 828 F.3d 1249, 1255 (11th Cir. 2016) (internal citations omitted). Furthermore, where a plaintiff cannot identify a reasonable accommodation, the defendant cannot be held liable for failing to engage in an interactive process. *Id.* at 1257 (citing *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997)). There is no record evidence which shows that plaintiff either identified or requested an accommodation which would enable

her to perform the essential functions of her position, or demonstrated that such accommodation would be reasonable. Plaintiff made no request to return to work for defendant in any capacity. Although plaintiff's attorney contacted defendant's legal department, asserting that she would be suitable for several positions, defendant's testimony is uncontroverted that those positions were either nonexistent or unavailable. Despite plaintiff's failure to identify and request accommodations, however, the record shows that defendant continued to identify positions which plaintiff could potentially perform and evaluate her ability to be transferred to those positions given her work restrictions.

The record evidence also fails to support plaintiff's retaliation claim. "The ADA also prohibits retaliation against an individual for opposing an unlawful practice or making a charge under the ADA." *Frazier-White*, 828 F.3d at 1258 (citing 42 U.S.C. § 12203(a)). In *Frazier-White*, the Eleventh Circuit explained that:

> To prevail on her ADA retaliation claim, Plaintiff must show that: (1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) there was a causal link between the two. The first element may be met by a request for a reasonable accommodation. *See Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998). The third element requires a showing of but-for causation. *See Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 135 S. Ct. 2517, 2533-34 (2013).

*Id.* In support of her retaliation claim, plaintiff argues that she was terminated because she asked the defendant for accommodations for her disability, and because she filed an EEOC charge alleging discriminatory conduct by the defendant. As discussed above, the record evidence demonstrates that plaintiff did not make a request for accommodation as understood under the ADA. Nevertheless, for purposes of ruling on the instant motion for

summary judgment, the court finds that the plaintiff satisfies the first two elements of a *prima facie* case – *i.e.*, she filed an EEOC charge alleging discriminatory conduct by defendant in August 2012, and defendant fired her in August 2013. That said, the plaintiff has not produced evidence of causation, and the third element of a *prima facie* case is not met. As discussed above, plaintiff has not identified or produced evidence that would allow a reasonable factfinder to find causation. Defendant's evidence indicates that plaintiff's employment was terminated due to her inability to return to work after a 12-month medical leave of absence, and plaintiff herself testified that she was terminated because she had been unable to return to work after being on a medical leave of absence for 12 months. She cannot demonstrate on the evidence of record that this was not the real reason for her termination or that the reason was false, and there is no evidence of record that the plaintiff's termination was in retaliation for her August 2012 complaint of discrimination. Thus, plaintiff's retaliation claim under the ADA fails, and defendant's motion for summary judgment is due to be granted.

## CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

(1) Defendant's motion for summary judgment is GRANTED, and summary judgment is hereby entered in defendant's favor on all claims.

(2) The Clerk of Court is DIRECTED to close this file.

A separate final judgment will be entered.

Done, on this the 4th day of December, 2018.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge